UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　　　　　**'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Susan Lovelace | Not Present |
| Andrew Thompson | |

**Proceedings:**　　　MOTION FOR DEFAULT JUDGMENT (Dkt. 12, filed on April 12, 2022)

## I.　INTRODUCTION

On February 2, 2022, the Trustees of the Southern California IBEW-NECA Pension Plan, Trustees of the Southern California IBEW-NECA Defined Contribution Trust Fund, Trustees of the Southern California IBEW-NECA Health Trust Fund, Trustees of the Southern California IBEW-NECA Supplemental Unemployment Benefit Trust Fund, Trustees of the Los Angeles Educational and Training Trust Fund, Trustees of the National Electrical Benefit Fund, Trustees of the Southern California IBEW-NECA Labor-Management Cooperation Committee, Trustees of the Southern California IBEW-NECA Labor-Management Cooperation Committee Trust Fund, Los Angeles Electrical Workers Credit Union, Contract Compliance Fund, Administrative Maintenance Fund, and Southern California IBEW-NECA Administrative Corporation (collectively, "plaintiffs") filed suit in this district against defendant Antonito Augusto Arce, an individual doing business as ARC Electrical Systems. Dkt. 1 ("Compl."). Plaintiffs assert claims for (1) breach of written collective bargaining agreements and related trust agreements; and (2) violation of Section 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1145. Id.

Plaintiffs allege that defendant signed written subscription agreements agreeing to be bound by the terms of the Local 11 IWA and Sound Agreements ("the Master Agreements") and related Trust Agreements for work performed on multiple school construction projects (the "Projects"). Id. ¶¶ 7-15. Plaintiffs assert that defendant breached the Master Agreements and/or Trust Agreements by failing to pay fringe benefit

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                            **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | | Date | May 23, 2022 |
|----------|-----------------------|---|------|--------------|
| Title    | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | | |

contributions and other amounts due as required by these agreements. Id. ¶ 24. Plaintiffs contend defendant owes unpaid fringe benefit contributions of at least $17,011.81. Id. Plaintiffs allege that defendant is an "employer" as defined by 29 U.S.C. § 1003(5) and therefore is "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA and has violated his statutorily-mandated duty to make these contributions. Id. ¶¶ 21, 37.

To date, defendant has not answered or otherwise responded to plaintiffs' complaint. Accordingly, on March 16, 2022, the clerk entered default against defendant. Dkt 11. Thereafter, on April 12, 2022, plaintiffs filed the instant motion for default judgment. Dkt. 13 ("Mot.").

The Court held a hearing on May 23, 2022. Defendant did not appear. Having carefully considered plaintiffs' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiffs, Trustees of the Southern California IBEW-NECA Pension Plan, Trustees of the Southern California IBEW-NECA Defined Contribution Trust Fund, Trustees of the Southern California IBEW-NECA Health Trust Fund, Trustees of the Southern California IBEW-NECA Supplemental Unemployment Benefit Trust Fund, Trustees of the Los Angeles County Electrical Educational and Training Trust Fund, Trustees of the National Electrical Benefit Fund ("NEBF"), Trustees of the Southern California IBEW-NECA Labor-Management Cooperation Committee ("So. Cal. LMCC"), and Trustees of the National NECA-IBEW Labor-Management Cooperation Committee Trust Fund ("National LMCC"), are the Trustees of express trusts ("Trusts") created pursuant to written Declarations of Trust ("Trust Agreements"). Compl ¶ 5. Except for the NEBF and National LMCC, the Trust Agreements are between various chapters of the International Brotherhood of Electrical Workers ("IBEW"), including Local No. 11 ("Local 11"), and various chapters, including the Los Angeles County chapter, of the National Electrical Contractors Association ("NECA"), an employer association in the electrical industry in Southern California. Id. The Trusts are now, and were at all times material to this action, Labor-Management multiemployer trusts created and maintained pursuant to §302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5), except for the So. Cal. LMCC and the National LMCC, which are Trusts created and maintained

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

pursuant to the Labor-Management Relations Act of 1947, as amended, and the Labor-Management Cooperation Act of 1975.  Id.  Plaintiffs, as Trustees of the express Trusts (except for the Trustees of the So. Cal. LMCC and the National LMCC), are "fiduciar[ies]" with respect to the Trusts as defined in Section 3(21)(A) of ERISA [29 U.S.C. §1002(21)(A)].  Id.  The Trusts are administered by the Trustees of the Trusts in Los Angeles County.  Id.

Plaintiff's complaint alleges that, on or about June 27, 2019, defendant signed a written subscription agreement whereby defendant agreed to be bound by the terms of a collective bargaining agreement known as the Inside Wiremen's Agreement between the Los Angeles County Chapter of NECA and Local 11 ("Local 11 IWA") and related Trust Agreements, for work performed on an Azusa Unified School District construction project known as the Azusa HS Marquee Replacement project, PN#281676 ("Azusa HS Project").  Id. ¶ 7.

Similarly, on or about June 27, 2019, defendant signed a written subscription agreement whereby defendant agreed to be bound by the terms of the Local 11 IWA and related Trust Agreements, for work performed on an Azusa Unified School District construction project known as the Gladstone HS Marquee Replacement project, PN#281676 ("Gladstone HS Project").  Id. ¶ 9.

Likewise, on or about June 12, 2019, defendant signed a written subscription agreement whereby defendant agreed to be bound by the terms of the Local 11 IWA and related Trust Agreements for work performed on a Norwalk-La Mirada Unified School District construction project known as the Julia Morrison Elementary School project PN#201819-13 ("Morrison ES Project").  Id. ¶ 11.  On or about June 12, 2019, defendant signed a written subscription agreement whereby defendant agreed to be bound by the terms of the Southern California 9th District Sound & Communications Agreement by and between the IBEW and NECA ("Sound Agreement") and related Trust Agreements for work performed on the Morrison ES Project.  Id. ¶ 12.[1]

---

[1] The Local 11 IWA and Sound Agreements are referred to collectively herein as the "Master Agreements."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

Finally, on or about June 28, 2021, defendant signed a written subscription agreement whereby defendant agreed to be bound by the terms of the Sound Agreement and related Trust Agreements for work performed on a Mt. San Antonio Community College School District construction project known as the STEM Center Project, PN #BID 3400 ("STEM Center Project").  Id. ¶ 14.

Plaintiffs allege that defendant is an "employer" as that term is defined in the Master Agreements and/or related Trust Agreements, and that defendant is an "employer" as defined and used in Section 3(5) of ERISA [29 U.S.C. §1002(5)], and, therefore, defendant is "obligated to make contributions to a multiemployer plan" within the meaning of Section 515 of ERISA [29 U.S.C. §1145].  Id. ¶¶ 20, 21.  Plaintiffs also allege that defendant is an "employer" engaged in "commerce" in an "industry affecting commerce," as those terms are defined and used in Sections 501(1) and 501(3) of the LMRA [29 U.S.C. §§ 142(1) and 142(3)], and within the meaning and use of Section 301(a) of the LMRA [29 U.S.C. §185(a)].  Id. ¶ 21.

According to plaintiff's complaint, defendant breached the Master Agreements and/or the related Trust Agreements by failing to pay plaintiffs fringe benefit contributions and/or other amounts due as required by the Master Agreements and/or related Trust Agreements.  Id. ¶ 24.  Defendant currently owes plaintiffs unpaid fringe benefit contributions of at least $17,011.81 based on monthly reports prepared by defendant and submitted to plaintiffs related to work performed on the Projects during the months of August 2021, October 2021 and November 2021.  Id.  Additionally, pursuant to the relevant agreements and ERISA, defendant is obligated to pay to plaintiffs liquidated damages for the detriment caused by the failure of defendant to pay fringe benefit contributions and other amounts owed to plaintiffs in a timely manner.  Id. ¶ 28. If a lawsuit is filed, as is the case here, the liquidated may be assessed at twenty percent (20%) of the unpaid or late paid contributions.  Id.  Additionally, defendant owes the plaintiffs interest accruing at 8% per annum on all unpaid or late paid fringe benefit contributions and related amounts from the dates the sums were originally due to plaintiffs to the date of judgment and post-judgment.  Id. ¶ 29.  Finally, pursuant to the relevant agreements and ERISA, defendant is obligated to pay all legal and auditing costs in connection with any delinquency.  Id. ¶ 30.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

## III.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and the plaintiff does not seek a sum certain, the plaintiff must apply to the court for a default judgment.  Fed. R. Civ. P. 55.

As a general rule, cases should be decided on the merits as opposed to by default, and, therefore, "any doubts as to the propriety of a default are usually resolved against the party seeking a default judgment."  Judge Virginia A. Phillips et al., Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial Ch. 6-A ¶ 6:11 (2021 ed.) (citing Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985)).  Granting or denying a motion for default judgment is a matter within the court's discretion.  Elektra Entm't Grp., Inc. v. Crawford, 226 F.R.D. 388, 392 (C.D. Cal. 2005); see also Sony Music Ent. Inc. v. Elias, No. CV03-6387DT(RCX), 2004 WL 141959, at *3 (C.D. Cal. Jan. 20, 2004).

The Ninth Circuit has directed that courts consider the following factors in deciding whether to enter default judgment: (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong policy favoring decisions on the merits.  See Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986); see also Elektra, 226 F.R.D. at 392.

"Before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2."  Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc., No. 2:17-cv-06650-ODW-FFM, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018).  Accordingly, when an applicant seeks a default judgment from the Court, the movant must submit a declaration specifying: "(a) When and against what party the default was entered; (b) The identification of the pleading to which default was entered; (c) Whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (d) That the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (e) That notice has been served on the defaulting party, if required by [Federal Rule of Civil Procedure] 55(b)(2)."  See C.D. Cal. L.R. 55-1.  Under Local Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
|---|---|---|---|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

55-2, "where an application for default judgment seeks unliquidated damages, the party seeking entry of the default judgment is obligated to serve notice of the application on the defaulting party regardless of whether the latter has appeared in the action." Halicki v. Monfort, No. 2:08-cv-00351-PSG-JTL, 2009 WL 10672966, at *2 (C.D. Cal. Nov. 19, 2009) (citing C.D. Cal. L.R. 55-2).

## IV.   DISCUSSION

### A.   Procedural Requirements

To satisfy the procedural requirements for entry of default judgment, the plaintiff must follow the "requirements set forth in Federal Rules of Civil Procedure 54(c) and 55, as well as Local Rule 55-1 and 55-2." Harman Int'l Indus., 2018 WL 1989518, at *1. In connection with their motion for default judgment, plaintiffs submitted a declaration attesting that: (a) on March 16, the Clerk of the Court entered default against defendant after defendant failed to respond to the complaint; (b) defendant is neither an infant nor an incompetent person; and (c) defendant is not in military service, meaning that the Servicemembers Civil Relief Act does not apply. Dkt. 15 at 7. Additionally, plaintiffs gave defendant notice of their motion, and of the May 23, 2022 hearing. Dkts. 17, 20.

Accordingly, plaintiffs have satisfied the procedural requirements for default judgment under the Federal and Local Rules. The Court now proceeds the merits of the plaintiffs' motion for default judgment.

### B.   Application of the Eitel Factors

#### 1.   Risk of Prejudice to Plaintiffs

The first Eitel factor considers whether a plaintiff will suffer prejudice if a default judgment is not entered. PepsiCo, Inc. v. California Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); see also Eitel, 782 F.2d at 1471-72. Here, plaintiffs will be unable to collect the unpaid fringe benefit contributions if default judgment is not entered in their favor. See PepsiCo, 238 F. Supp. 2d at 1175 (finding courts favor entry of default judgment when, absent entry of default judgment, plaintiffs "will likely be without other recourse for recovery").

Accordingly, the first Eitel factor weighs in favor of entering default judgment for plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

2.    <u>Sufficiency of the Complaint and the Likelihood of Success on the Merits</u>

Courts often consider the second and third <u>Eitel</u> factors together.  See <u>PepsiCo</u>, 238 F. Supp. 2d at 1175; <u>HTS, Inc. v. Boley</u>, 954 F. Supp. 927, 941 (D. Ariz. 2013).  The second and third <u>Eitel</u> factors assess the substantive merits of the movant's claims and the sufficiency of its pleadings, which "require that a [movant] state a claim on which [it] may recover."  <u>PepsiCo</u>, 238 F. Supp. 2d at 1177 (quotation marks omitted); <u>see also</u> <u>Danning v. Lavine</u>, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that the issue is whether the allegations in the pleading state a claim upon which plaintiff can recover).  For the purposes of default judgment, all well-pleaded allegations in the complaint, except those relating to damages, are assumed to be true.  <u>Geddes v. United Fin. Grp.</u>, 559 F.2d 557, 560 (9th Cir. 1977).  However, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  <u>Cripps v. Life Ins. Co. of N. Am.</u>, 980 F.2d 1261, 1267 (9th Cir. 1992).

Here, the facts alleged in the complaint are straightforward, and are sufficient to establish plaintiffs' claims.  Defendant is obligated under several collective bargaining agreements to pay fringe benefit contributions to plaintiffs.  See Compl.  Importantly, plaintiffs establish the amounts owed to them through the submission of defendant's monthly reports.  See Dkt. 14 (Declaration of Raul Rodriguez, Director of the Audit and Remittance Processing Department for the Southern California IBEW-NECA Administrative Corporation ("Rodriguez Decl.")), Ex. L.  Plaintiffs also submit the relevant contractual agreements with defendant.  See Rodriguez Decl., Exs. A-K.

Because plaintiffs' allegations and supporting evidence establish a likelihood that plaintiffs would prevail on the merits on their claims for fringe benefit contributions, the second and third <u>Eitel</u> factors weigh in favor of granting plaintiffs' motion for default judgment.

3.    <u>Sum of Money at Stake in the Action</u>

Pursuant to the fourth <u>Eitel</u> factor, the Court balances "the amount of money at stake in relation to the seriousness of the [defaulting party's] conduct."  <u>PepsiCo</u>, 238 F. Supp. 2d at 1176; <u>see also</u> <u>Eitel</u>, 782 F.2d at 1471–72.  "This determination requires a comparison of the recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate."  <u>United States v. Broaster Kitchen, Inc.</u>, No. 2:14-cv-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | | Date | May 23, 2022 |
|---|---|---|---|---|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | | |

09421-MMM-PJW, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015); see also Walters v. Statewide Concrete Barrier, Inc., No. 3:04-cv-02559-JSW, 2006 WL 2527776, *4 (N.D. Cal. Aug. 30, 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted.").

Plaintiffs seek $17,011.81 in unpaid fringe benefit contributions, $674.09 in prejudgment interest, $3,402.36 in liquidated damages, $15,483.39 in attorneys' fees (including litigation expenses), and $477.00 in costs. Mot. at 25. Because the total amount of money at stake is reasonably proportional to defendant's conduct in failing to pay the required benefits, the Court concludes that the fourth Eitel factor weighs in favor of entry of default judgment.

4.     Possibility of Dispute Concerning a Material Fact

The fifth Eitel factor considers the possibility that material facts are disputed. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." PepsiCo, 238 F. Supp. 2d at 1177.

Here, plaintiffs have "filed a well-pleaded complaint alleging the facts necessary to establish its claims, and the court clerk entered default against" defendant. Philip Morris USA, Inc. v. Castworld Prod. Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). Accordingly, "no dispute has been raised regarding the material averment of the complaint, and the likelihood that any genuine issue may exist is, at best, remote." Id.; see Elektra, 226 F.R.D. at 393.

Accordingly, the fifth factor weights in favor of granting the motion for default judgment.

5.     Possibility of Excusable Neglect

The sixth Eitel factor considers whether the defendant's default may have been the product of excusable neglect. PepsiCo, 238 F. Supp. 2d at 1177; see also Eitel, 782 F.2d at 1471–72.

Here, the possibility of excusable neglect is remote. Since defendant was properly served with the complaint, with the summons, and with the instant motion, and has failed

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | | Date | May 23, 2022 |
|---|---|---|---|---|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | | |

to appear in this action, this factor weighs in favor of entering default judgment against defendant.

>      6.      Policy Favoring Decisions on the Merits

Under the seventh Eitel factor, the Court takes into account the strong policy favoring decisions on the merits. See Eitel, 782 F.2d at 1472. Of course, "this preference, standing alone, is not dispositive." PepsiCo, 238 F. Supp. 2d at 1177 (citation omitted). "Notwithstanding the strong policy presumption in favor of a decision on the merits, where a defendant's failure to appear and respond 'makes a decision on the merits impractical, if not impossible,' default judgment is appropriate." Constr. Laborers Tr. Funds for S. Cal. Admin. Co. v. Black Diamond Contracting Grp., Inc., No. S8:17-cv-00770-JLSDFM, 2017 WL 6496434, at *5 (C.D. Cal. Dec. 18, 2017). Since defendant's failure to appear or otherwise respond makes a decision on the merits in this case "impractical, if not impossible," id., this factor does not preclude entry of default judgment.

>      7.      Conclusion Regarding Eitel Factors

Apart from the policy favoring decisions on the merits, all the remaining Eitel factors weigh in favor of default judgment, including the merits of plaintiffs' claims. See Federal Nat. Mortg. Ass'n v. George, No. 5:14-cv-01679-VAP-SP, 2015 WL 4127958, *3 (C.D. Cal. July 7, 2015) ("The merits of the plaintiff's substantive claim and the sufficiency of the complaint are often treated by courts as the most important Eitel factors.") (citation omitted). Therefore, weighing all the Eitel factors, the Court finds that entry of default judgment against defendant is appropriate.

**C.      Relief Sought by Plaintiffs**

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987) (quotation marks omitted). The "[p]laintiff has the burden of proving damages through testimony or written affidavit." See Bd. of Trustees of the Boilermaker Vacation Tr. v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Moreover, the movant seeking default judgment must prove the damages sought, and although the Court may hold an evidentiary hearing to determine the amount of damages, no hearing is necessary "if the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | | Date | May 23, 2022 |
|---|---|---|---|---|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | | |

amount of damages can be determined from definite figures contained in the documentary evidence or in detailed affidavits." Bravado Int'l Grp. Merch. Servs., Inc. v. Quintero, No. 2:13-cv-00693-SVW-SS, 2013 WL 12126750, at *4 (C.D. Cal. Nov. 27, 2013) (citation omitted).

Here, plaintiffs seek $17,011.81 in unpaid fringe benefit contributions, $674.09 in prejudgment interest, $3,402.36 in liquidated damages, $15,483.39 in attorneys' fees (including litigation expenses), and $477.00 in costs. Mot. at 24. In addition, plaintiffs seek post-judgment interest at the statutory rate. The Court addresses each of these requests in turn.

        1.       <u>Fringe Benefit Contributions</u>

Defendant submitted Monthly Reports to plaintiffs that reflect that, as of February 2, 2022, the date the Complaint was filed, defendant owed plaintiffs $17,011.81 in fringe benefit contributions related to work performed during the months of August 2021, October 2021, and November 2021 under the Master Agreements. See Rodriguez Decl, Ex. L. Defendant has not paid these amounts. The Court finds that plaintiffs request for $17,011.81 in fringe benefit contributions is appropriate and supported by sufficient evidence.

        2.       <u>Interest, Liquidated Damages, Attorneys' Fees, and Costs</u>

The Master Agreements and related Trust Agreements contain provisions that require defendant to pay interest, liquidated damages, audit fees, attorneys' fees, and costs. See Rodriguez Decl., Exs. A-D, J, K, M, and N. They payment of these expenses is supported by § 502(g)(2) of ERISA [29 U.S.C. § 1132(g)(2)], which states, in part, that:

"[i]n any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of-- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A), (D) reasonable attorney's fees and costs of the action, to be paid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                           **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
|----------|------------------------|------|--------------|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

by the defendant, and (E) such other legal or equitable relief as the court deems appropriate."

29 U.S.C.A. § 1132(g)(2).  The Ninth Circuit has stated that "Section 502(g)(2) . . . requires that attorney's fees be awarded."  <u>San Pedro Fishermen's Welfare Tr. Fund Loc. 33 v. Di Bernardo</u>, 664 F.2d 1344, 1346 (9th Cir. 1982).  Accordingly, pursuant to § 502(g)(2) of ERISA, the Court finds that an award of interest, liquidated damages, attorneys' fees, and costs is appropriate in this case.

Plaintiffs request that the Court provide for interest at the annual rate of eight percent (8%) of the unpaid contributions, which is the rate set out in the Trust Agreements and in the Southern California IBEW-NECA Joint Collection Committee's Collection Policy and Procedures.  <u>See</u> Rodriguez Decl., Exs. A-D, M-N.  The Court finds that 8% prejudgment interest, totaling $674.09, is appropriate.  <u>See</u> 29 U.S.C.A. § 1132(g)(2) ("[I]nterest on unpaid contributions shall be determined by using the rate provided under the plan or, if none, the rate prescribed under section 6621 of Title 26.").  Likewise, pursuant to 29 U.S.C. § 1132(g)(2), the Court finds that post-judgment interest is appropriate, at the same rate.

Additionally, the Court finds that the 20% liquidated damages is appropriate pursuant to the Master Agreements and Trust Agreements, which provide for 20% liquidated damages if a lawsuit was filed.  <u>See</u> Rodriguez Decl., Exs. A-D, J-K, M. Additionally, § 502(g)(2) of ERISA explicitly allows recovery of "liquidated damages provided for under the plan in an amount not in excess of 20 percent."  Accordingly, the Court finds that awarding $3,402.36 in liquidated damages is appropriate.

Next, the Court addresses attorneys' fees.  Plaintiffs "seek attorneys' fees in the amount of $15,365.00 and litigation expenses of $118.39."  Pursuant to Local Rule 55-3, attorneys' fees awarded on a default judgment are generally calculated according to a fee schedule.  <u>See</u> L.R. 55-3.  When the amount of judgment is between $10,000.01-$50,000, the attorneys' fee award is $1200 plus 6 percent of the amount over $10,000.  Here, pursuant to Local Rule 55-3, plaintiffs would be entitled to $1,893.91 in attorneys' fees—$1,200 plus 6 percent of $11,565.26.

However, in the Ninth Circuit, "'[i]f a party seeks a fee 'in excess of' the schedule and timely files a written request to have the fee fixed by the court, then the court must hear the request and award a 'reasonable' fee.'"  <u>Bd. of Directors of Motion Picture</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | Date | May 23, 2022 |
|----------|----------------------|------|--------------|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | |

<u>Indus. Pension Plan v. Mar. On Prods., Inc.</u>, No. 2:19-cv-05885-CAS-JC, 2019 WL 5595045, at *6 (C.D. Cal. Oct. 29, 2019) (quoting <u>Vogel v. Harbor Plaza Ctr.</u>, LLC, 893 F.3d 1152, 1159 (9th Cir. 2018)). "The Ninth Circuit has expressly held that the standard for determining the amount of attorney's fees in ERISA cases is the lodestar/multiplier approach." <u>Motion Picture Indus. Pension Plan v. Klages Grp., Inc.</u>, 757 F. Supp. 1082, 1087 (C.D. Cal. 1991). Under this approach, the Court calculates the attorneys' fees "by multiplying the number of hours *reasonably expended* on the litigation by a *reasonable* hourly rate." <u>Vogel</u>, 893 F.3d at 1160 (emphases in original) (internal citation and quotation marks omitted).

Here, plaintiffs calculate the $15,365.00 in requested attorneys' fees based on 67.5 hours of professional services rendered, using a rate of either $200.00 or $390.00 per hour for attorneys, and a rate of $120.00 per hour for paralegals. <u>See</u> Dkt. 15 (Declaration of plaintiffs' counsel Andrew Q. Thompson ("Thompson Decl.")) ¶ 3. In connection with a default judgment in another ERISA case, another court in this district recently approved an award of attorneys' fees based on hourly rates of $300.00 for attorneys and $115.00 for legal assistants, for 40.30 hours of professional services rendered. <u>See</u> <u>Teamsters Multi-Benefit Tr. Fund v. California Offset Printers, Inc.</u>, No. 2:18-cv-08996-ABR-AO, 2019 WL 3249605, at *4 (C.D. Cal. May 1, 2019). In addition, the Ninth Circuit has observed that "fees of $375 and $400 per hour [are] established as being in line with prevailing community rates" for "ERISA plaintiffs' lawyers." <u>Welch v. Metro. Life Ins. Co.</u>, 480 F.3d 942, 947 (9th Cir. 2007). Accordingly, the Court finds reasonable plaintiffs' request for $15,365.00 in requested attorneys' fees based on 67.5 hours of professional services rendered.

In addition, plaintiffs' request for $118.39 in litigation expenses, which includes $30.75 for costs related to copying, printing and scanning, and $87.64 for postage, is appropriate. This is because, according to plaintiffs' declarations, billing those litigation expenses separately is "the prevailing practice in the Trust Fund litigation community." Mot. at 19; <u>see</u> <u>Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.</u>, 460 F.3d 1253, 1258 (9th Cir. 2006) ("[R]easonable attorney's fees include litigation expenses only when it is the prevailing practice in a given community for lawyers to bill those costs separately from their hourly rates.") (internal citations and quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-00748-CAS-KSx | | Date | May 23, 2022 |
|----------|----------------------|---|------|--------------|
| Title | Trustees of the Southern California IBEW-NECA Pension Plan et al v. Antonio Augusto Arce | | | |

Finally, the Court finds that plaintiffs request for $477.00 in costs for the complaint filing fee of $402.00 and attorney service fees of $75.00 related to service of the summons and complaint are appropriate.  See 28 U.S.C.A. § 1920(1).

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** plaintiffs' motion for default judgment.  The Court awards plaintiffs a total of $37,048.65, consisting of $17,011.81 in unpaid fringe benefit contributions, $674.09 in prejudgment interest, $3,402.36 in liquidated damages, $15,365.00 in attorneys' fees, $118.39 in litigation expenses, and $477.00 in costs.  The Court also awards the post-judgment interest, from the date of entry of this order until the date the judgment is paid in full.

IT IS SO ORDERED.

|  | 00 | : | 05 |
|--|----|---|----|
| Initials of Preparer | | CMJ | |